**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

      v.                                                     Cr. No. 09-1052 BB

JOSEPH MICHAEL NEAL,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is Defendant Joseph Neal's motion to suppress. For the reasons set forth below, the motion is denied.

*Defendant's Arguments*

Defendant seeks suppression of evidence against him—a firearm—because, he contends, it was seized in violation of his Fourth Amendment rights. Defendant's arguments regard both his detention and arrest. First, Defendant argues that U.S. Forest Service Officer David Chavez[1] lacked reasonable suspicion to detain him and that Officer Chavez's post-stop actions impermissibly exceeded the scope of the detention. Next, addressing his arrest, Defendant makes both a general lack-of-probable-cause argument and a more novel one, namely that the firearm should be suppressed because Officer Chavez arrested Defendant for a misdemeanor in spite of not having observed any part of the crime. Defendant's novel argument relies on the

---

[1] Officer Chavez is also a deputized officer of several New Mexico counties, including Bernalillo where this incident occurred, and is thus empowered to enforce New Mexico traffic laws.

misdemeanor-arrest rule, under which an officer may execute a warrantless misdemeanor arrest only if the offense was committed "in the officer's presence." *State v. Ochoa,* 182 P.3d 130, 134 (N.M. 2008) (recognizing New Mexico's adoption of the misdemeanor-arrest rule); *see also, e.g., City of Las Cruces v. Sanchez,* 210 P.3d 212, 214 (N.M. 2009).

Based on these violations, Defendant argues that the Fourth Amendment requires suppression of the firearm. The Court addresses each of Defendant's arguments in turn.

### *Investigatory Detention and the Fourth Amendment*

Defendant alleges that his detention violated the Fourth Amendment 1) because Officer Chavez "did not have reasonable suspicion to detain" him and 2) because Officer Chavez impermissibly exceeded the scope of the investigatory detention. On the former, Defendant adds that the stop was impermissible because, contrary to Officer Chavez's testimony, Defendant was not driving with his headlights off. On the latter, Defendant contends that the scope of Officer Chavez's post-stop actions were not sufficiently related to the reason for the stop.

Initially, the Court notes that the factual question of whether Defendant actually committed the headlights violation is not dispositive of his argument. Though he claims that the alleged headlights violation was the primary reason for the stop, Officer Chavez's testimony makes clear that a second, separate impetus was his suspicion about fee-tube theft. Officer Chavez's stop could thus be valid if it was based on either the headlights violation or on a reasonable suspicion about fee-tube theft. *See United States v. Arzaga,* 9 F.3d 91, 93 (10th Cir. 1993) (recognizing traffic violation that caused stop need not be meritorious where the officer also had a reasonable suspicion of a non-traffic crime)*; see also generally United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). His reliance on the purported

headlights violation does not affect whether the stop was justified. *See, e.g., United States v. Lowe*, 9 F.3d 43, 45 (8th Cir. 1993) (upholding stop where officer's reason was meritless because officer could have lawfully stopped defendant on other grounds); *United States v. Cardona-Rivera*, 904 F.2d 1149, 1153 (7th Cir. 1990) (upholding stop where officers' testimony that they stopped defendant for traffic violation was "not worthy of belief" because officers had a reasonable suspicion of drug trafficking); s*ee also Arzaga,* 9 F.3d at 93*; Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

While there is significant disagreement among the parties about whether the headlights violation actually occurred, and the Court found the Officer more credible on this point, the propriety of the stop under the fee-tube-theft justification is dispositive. Under that analysis, three important issues arise: 1) whether Officer Chavez was legally justified in stopping Defendant for the theft investigation, 2) whether Officer Chavez was legally justified in ordering Defendant and his passenger out of the vehicle, and 3) whether Officer Chavez's post-stop activity exceeded the reasonable scope of the stop. The Court addresses these issues in order.

First, Officer Chavez was justified in stopping Defendant as part of his theft investigation. Law enforcement officers may stop and briefly detain a person for investigative reasons if the officer has a reasonable suspicion that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A reasonable suspicion requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). In determining whether a reasonable suspicion existed, this Court considers the totality of the circumstances. *Sokolow*, 490 U.S. at 8.

Here, Officer Chavez had a particularized and objective basis for suspecting that criminal activity was afoot.  Indeed, Officer Chavez encountered Defendant while staking out Defendant's location because a pattern of previous thefts from this tube on a weekend night past midnight.  Officer Chavez's suspicions were bolstered by what was, in his extensive experience, Defendant's unlikely presence in that location at that time of night and Defendant's uncommon decision to park directly adjacent to the fee tube with his headlights off.

Next, Officer Chavez was legally justified in ordering Defendant and his passenger out of the vehicle.  "An officer also may order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger."  *U.S. v. Holt,* 264 F.3d 1215, 1222 (10th Cir. 2001) (*citing Maryland v. Wilson*, 519 U.S. 408, 415 (1997)).  As Officer Chavez testified, the location in which Defendant was stopped is quite remote.  If called, back-up would have taken over 45 minutes to arrive.  Officer Chavez testified that, in view of these facts, he asked Defendant and his passenger out of the vehicle to ensure his own safety.  This Court believes Officer Chavez's testimony and thus finds nothing improper in Defendant and his passenger being ordered out of the vehicle.

Finally, regarding Defendant's scope argument, this Court is not persuaded that this case raises serious concerns about the scope of Officer Chavez's post-stop actions—regardless of why he stopped Defendant.  Testimony indicates that Officer Chavez observed the crumpled deposit envelope and dollar bills on the car seat.  His first act during the stop was to order Defendant and his passenger out of the vehicle, whereupon he noticed the claw pickup tool—which he recognized as the same type of tool that had been used in videos of the previous fee-tube thefts—that the female passenger, Ashley Walker, had been sitting on.  Because this Court finds

-4-

that Officer Chavez possessed a reasonable suspicion of theft at that point, so as to possess sufficient Fourth Amendment grounds to proceed with his investigation.[2]

While Officer Chavez's reasonable suspicion of theft justifies Defendant's detention, Defendant's arrest-related objections remain.

### *The Misdemeanor-Arrest Rule and the Fourth Amendment*

Defendant next argues that his arrest ran afoul of Fourth Amendment protections because Officer Chavez violated the misdemeanor-arrest rule. Defendant is mistaken because, as discussed *infra*, the misdemeanor-arrest rule is not mandated by the Fourth Amendment but is, instead, a common-law doctrine adopted on a state-by-state basis. New Mexico's adoption of the misdemeanor-arrest rule does not alter the content of Fourth Amendment protections. The purported invalidity of Defendant's arrest under state law, thus, does not compel—nor even counsel—this *federal* Court to exclude evidence.

Such a result is understandable because the misdemeanor-arrest rule does not derive from the Fourth Amendment.[3] Rather, it is a product of framing-era common law which has been

---

[2] Indeed, as discussed *infra*, this Court finds that Officer Chavez had probable cause at that point.

[3] *See, e.g., Atwater v. City of Lago Vista*, 532 U.S. 318, 341 n. 11 (2001) ("We need not, and thus do not, speculate whether the Fourth Amendment entails an "in the presence" requirement for purposes of misdemeanor arrests."); *see also Welsh v. Wisconsin*, 466 U.S. 740, 756 (1984) (White, J., dissenting) ("[T]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment.") (cited in *id.*); *see also generally Virginia v. Moore,* 553 U.S. 164 (2008); *Knight v. Jacobson*, 300 F.3d 1272, 1276 n. 3 (11th Cir. 2002) (noting that every circuit to address whether there is a Fourth Amendment-based misdemeanor-arrest rule has held that there is not); *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997) ("To date, neither the Supreme Court nor this circuit ever has held that the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers."); *Fields v. City of South Houston*, 922 F.2d at 1183, 1189 (5th Cir. 1991) ("The United States Constitution does not require a warrant for

adopted or rejected on a state-by-state basis.  *See Ochoa,* 182 P.3d at 134 ("The misdemeanor arrest rule is a holdover from the common law distinction between warrantless arrests for felonies and for misdemeanors . . . .")*; see also, e.g., Woods v. City of Chicago,*  234 F.3d 979, 995 (7th Cir. 2000) ("[G]iven the weight of Supreme Court authority on this issue [and] the overwhelming consensus of the circuits . . . we reject [Defendant's] invitation to constitutionalize the framing-era common law of misdemeanor arrests [specifically, the misdemeanor arrest rule].");  *see also U.S. v. Planells-Guerra,* 509 F.Supp.2d 1000, 1009 n. 33 (D. Utah 2007) (collecting cases).  Because it lacks a federal or constitutional basis, the misdemeanor-arrest rule at issue in this case is solely one of New Mexico law.

As such, its violation does not weigh heavily in this Court's Fourth Amendment suppression analysis.  "[T]he fact that the arrest, search, or seizure may have violated state law is irrelevant so long as the standards developed under the [f]ederal Constitution were not offended."  *U.S. v. Green,* 178 F.3d 1099, 1106 (10th Cir. 1999)*; see also, e.g., Moore,*  553 U.S. at 1607 ("[W]hile States are free to regulate [ ] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."); *U.S. v. Turner,* 553 F.3d 1337, 1346 (10th Cir. 2009) (quoting *Moore,* 553 U.S. at 1607); *Planells-Guerra*, 509 F.Supp.2d at 1007-08 (collecting Tenth Circuit cases); *but see U.S. v. Mikulski,* 317 F.3d 1228, 1232 (10th Cir. 2003) (citing without comment the Eighth Circuit's recognition that the question of compliance with state law may be "relevant in determining whether police conduct was reasonable for Fourth Amendment purposes.") (citing *United States v. Baker*, 16 F.3d 854, 856 n. 1 (8th Cir. 1994)).

---

misdemeanors not occurring in the presence of the arresting officer."); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) ("The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment.").

Accordingly, this Court's task is largely unaltered by Defendant's misdemeanor-arrest-rule argument[4]: it must determine whether there was probable cause for Defendant's arrest. *See Atwater*, 531 U.S. at 353 ("Accordingly, we confirm today what our prior cases have intimated: the standard of probable cause applies to all arrests, without the need to balance the interests and circumstances involved in particular situations.") (internal punctuation omitted).

### *Defendant's Arrest and Probable Cause*

Thus, both of Defendant's arrest-related arguments depend on the purported lack of probable cause. When found, probable cause must be "based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Cortez v. McCauley,* 478 F.3d 1108, 1116 (10th Cir. 2007). Probable cause does not, however, require a *prima facie* showing of criminal activity—just a probability of such activity. *Id.*

---

[4] It is also worth noting that the propriety of the search incident to arrest (that uncovered the firearm) is equally unaffected by the misdemeanor-arrest rule. While the Tenth Circuit has not addressed this issue directly, it would likely join its sister circuits in holding that exclusion of evidence resulting from such searches is proper only when the arrest violated Fourth Amendment principles. *See U.S. v. Gonzales*, 535 F.3d 1174, 1182 (10th Cir. 2008) ("Although [ ] we have indicated that compliance with state law may be relevant to our Fourth Amendment reasonableness analysis, we have never held it to be determinative of the constitutionality of police conduct.")*; Planells-Guerra*, 509 F.Supp.2d at 1009 ("[T]he Tenth Circuit seems unlikely to follow the minority view, which requires that a valid arrest under state law precede a lawful search incident to arrest.") (*affirmed by* 280 Fed.Appx. 712 (10th Cir. 2008)); *see also, e.g., U.S. v. Chirino,* 483 F.3d 141, 149-50 (2nd Cir. 2007) ("[T]he appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the arrest, search, or seizure violated the Fourth Amendment . . . . because the exclusionary rule is only concerned with deterring Constitutional violations."); *U.S. v. Jones*, 185 F.3d 459, 463 (5th Cir. 1999) (noting the propriety of an arrest for exclusionary rule purposes is measured under the Fourth Amendment, violations of state law notwithstanding). Such a result seems logical, as tying the admissibility of evidence to an officer's compliance with state law would undermine federal courts' oft-repeated duty to assess the propriety of state officers' actions in light of federal constitutional protections, rather than in view of state law. *See, e.g., Green,* 178 F.3d at 1105.

Here, Officer Chavez had sufficient probable cause to make the arrest. Officer Chavez confronted Defendant while staking out a picnic-area fee tube around 1:00 AM on a Saturday night. Prior to initiating the stake-out, Officer Chavez was aware of surveillance footage—taken after a rash of fee-tube thefts—showing that the fee-tube thefts took place at such locations, at such times, the most recent theft occurring on the previous Saturday night. Upon arriving at the picnic area, Officer Chavez noticed Defendant's vehicle parked next to a fee tube. This seemed peculiar to Officer Chavez because, in his experience, people do not usually park next to fee tubes in the middle of the night.[5] Acting on his suspicion, Officer Chavez engaged his car's emergency lights, got out of the car, and approached Defendant's vehicle on foot. Upon arrival, he observed Defendant sweating profusely and acting visibly nervous. Peering into Defendant's vehicle, Officer Chavez also observed, in plain sight, a crumpled blue fee envelope and crumpled dollar bills on the floor and seat of the vehicle, respectively. Officer Chavez asked Defendant and Ashley Walker, the female passenger, to step out of the vehicle, whereupon he noticed the claw pickup tool. Based on Officer Chavez's experience conducting traffic stops, knowledge of the method, location, and time of previous fee-tube thefts, experience regarding late-night parking patterns in Cibola National Forest, observation of Defendant's demeanor, and recognition of the crumpled envelopes, crumpled bills, and claw pickup tool in Defendant's vehicle, Officer Chavez had sufficient information on which to reasonably believe that Defendant had committed a crime.

---

[5] Both Ms. Walker and Mr. Neal contradicted Officer Chavez's testimony that he saw Defendant running away from the tube and getting in his vehicle. It does seem highly unlikely that, had Officer Chavez seen Defendant running away from the tube, he would have waited until Defendant got in his vehicle and began driving with his lights off before engaging his emergency equipment. The Court has therefore disregarded the officer's testimony on this point.

Because he had probable cause, Officer Chavez's arrest of Defendant—and the subsequent search of Defendant's vehicle—was valid under the Fourth Amendment. Accordingly, evidence obtained as a result of Defendant's arrest, including the firearm, is admissible in these proceedings.

*Conclusion*

For the foregoing reasons, Defendant's motion to suppress is denied.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion to suppress filed by Defendant (Doc. 14) be, and hereby is, DENIED.

Dated this 1st day of February, 2010.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE